UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-cv-62355-RAR

REMEMBER EVERYONE DEPLOYED, INC.
A Florida not for profit corporation,

        Plaintiff,

vs.

AC2T, INC., d/b/a SPARTAN MOSQUITO,
A Mississippi corporation; and
JEREMY HIRSCH, an individual,

        Defendants.

_____/

## AMENDED COMPLAINT FOR DAMAGES

Plaintiff, Remember Everyone Deployed Inc., by and through its undersigned attorneys and pursuant to this Court's Order Affirming and Adopting Report and Recommendation [DE 29], hereby files its Amended Complaint against Defendants AC2T, Inc. d/b/a Spartan Mosquito and Jeremy Hirsh (collectively, "Defendants"), and alleges as follows:

1.      This is an action for infringement of Plaintiff's common law trademark, for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and applicable Florida law, for breach of oral contract, fraud, promissory estoppel, breach of contract implied in fact, and breach of contract implied in law.

## PARTIES

2.      Plaintiff Remember Everyone Deployed Inc. ("R.E.D." or "Plaintiff") is a not-for-profit corporation organized under the laws of the State of Florida and has its principal places of business in Jacksonville, North Carolina and Pompano Beach, Florida.

3.      Plaintiff R.E.D. provides charitable services and support to deployed military servicemembers and their families.

4.      Defendant AC2T, Inc., doing business as Spartan Mosquito ("Spartan"), is a corporation that is incorporated in the State of Mississippi and has its principal place of business in Laurel, Mississippi.

5.      Upon information and belief, Defendant Spartan is in the business of pest control management.

6.      Upon information and belief, Defendant Jeremy Hirsh ("Hirsh") is an individual who resides in Laurel, Mississippi.

7.      Upon information and belief, Defendant Hirsh is the founder of Defendant Spartan.

## JURISDICTION AND VENUE

8.      This court has subject matter jurisdiction over this case because it is an action for damages in excess of $30,000.00, exclusive of interest, attorneys' fees, and costs.

9.      This court has personal jurisdiction over Defendant Spartan because Defendant Spartan solicited business within this state, entered into an agreement, and subsequently breached that agreement in this state.

10.     This court has personal jurisdiction over Defendant Hirsh because Defendant Hirsh solicited business within this state, entered into an agreement, and subsequently breached that agreement in this state.

## GENERAL ALLEGATIONS

**A.      Plaintiff and its R.E.D. Branding, Remember Everyone Deployed Mark, the RED Globe Logo, and RED Logo**

11.     Plaintiff R.E.D. is a charitable organization engaged in charitable fundraising services by means of organizing and coordinating events, providing financial sponsorship of

military appreciation events, promoting public awareness of the need to support deployed military servicemembers and their families, organizing and conducting volunteer programs and community service projects aimed at increasing support and morale of families of the deployed military servicemembers, selling goods to raise funds for deployed military servicemembers and their families, and providing emotional support services for deployed military servicemembers and their families by means of arranging and conducting farewell and welcome home events.

12.     Since 2016, Plaintiff has been substantially and exclusively using RED, R.E.D, Remember Everyone Deployed, and RemeberEveryoneDeployed.org in various forms in its marketing, advertising, and promotion of its charitable services to the military and their families (collectively, the "R.E.D. Branding").

13.     Plaintiff is the owner of the following domain names: remembereveryonedeployed.org, remembereveryonedeployed.com, rememberthedeployed.com, everyonedeployed.org, everyonedeployedremembered.org, everyonedeployedremembered.com, everyonedeployed.com, supportred.com, and redsupport.com.

14.     Plaintiff's R.E.D. Branding includes a highly stylized design of the image of a global map with the wording RED superimposed at the top of the map and the vertical portion of each letter consisting of the words "REMEMBER," "EVERYONE," and "DEPLOYED," respectively, and the image of a battleship towards the bottom bearing an American flag on a pole on the left side of the ship, and jets in flight on the right side ("RED Globe Logo") in connection with its charitable services.  Additionally, Plaintiff uses, the word RED with the vertical portion of each letter consisting of the words "REMEMBER," "EVERYONE," and "DEPLOYED," respectively ("RED Logo") apart from the globe design, and in connection with its charitable services:

 

15.     Plaintiff enjoys a great reputation for its charitable services and community involvement in and around Florida and North Carolina.

16.     Plaintiff is the owner of common law rights for its R.E.D. Remember Everyone Deployed marks for charitable services by virtue of use of the marks in commerce by Plaintiff, and R.E.D. has owned rights to those marks long before Defendants' use.

17.     On December 20, 2019, because of this substantial goodwill, Defendant Hirsh contacted Plaintiff with an unsolicited offer for Plaintiff to co-sponsor NASCAR Cup Series with Defendant Spartan, in order to take advantage of Plaintiff R.E.D.'s established reputation for military supporting charitable services with the R.E.D. Branding and the R.E.D. Globe Logo.  *See* Exhibit A.

**B.     Defendants' Unlawful Activities**

18.     Defendant Hirsh represented to Plaintiff that Defendant Spartan would co-sponsor with Plaintiff R.E.D.:  a car in the NASCAR Cup Series, that the driver of the NASCAR car would make social media posts about Plaintiff's charitable services, and that Defendant Spartan would provide at least two "hot passes" for any race where Plaintiff's logo appeared on the car.  *See* Exhibit A.

19.     In order to proceed as promised, Defendant Hirsh requested a copy of Plaintiff R.E.D.'s logo, and proprietary access to Plaintiff's website (www.remembereveryonedeployed.org) and Facebook page (@RED.Remember.Everyone.Deployed).  *See* Exhibit B.

20.     According to Defendant Hirsh, with this access, Defendant Spartan would improve the speed of website, optimize the website for mobile browsing, and engage with Plaintiff R.E.D.'s established audience on its Facebook page by responding to messages and managing ads to "fix monetization of [Plaintiff's] website products."  *See* Exhibit B.

21.     In reliance on this representation, Plaintiff provided Defendant Hirsh with internal confidential data, planning documents, and administrative login and password information required to enter the backend of Plaintiff's website and Facebook page.

22.     Armed with this proprietary access, Defendant Hirsh entered the website under the guise of sprucing it up in preparation for the NASCAR co-sponsorship between Plaintiff, using Plaintiff's R.E.D. Branding, and Defendant Spartan.

23.     On February 19, 2020, unbeknownst to Plaintiff and without Plaintiff's authorization, Defendant Hirsh registered, or caused to be registered, a domain name for www.remembereveryonedeployed.today, to be used with Defendant Hirsh's own competing charitable services and platforms to promote those charitable services, while continuing to represent to Plaintiff the endorsement of a co-sponsorship between R.E.D. and Defendant Spartan. *See* Exhibit C.

24.     Meanwhile, Defendants proceeded to use Plaintiff's RED Globe Logo alongside Defendant Spartan's logo on the number 15 NASCAR car, on the driver's suit on the left side, and on the number 15 car hauler.  *See* Exhibit D.





25.     On February 26, 2020, Defendant Hirsh emailed Plaintiff a mockup of the proposed changes to the website and document containing the "baseline" changes to the website Defendant Spartan required of Plaintiff R.E.D.  *See* Exhibit E.

26.     On March 3, 2020, Plaintiff sent Defendant Hirsh a letter outlining Plaintiff's vision for the website overhaul.  Thereafter, there were several missed attempts to connect by phone, and ultimately, radio silence from Defendant Hirsh.  *See* Exhibit F.

27.     During this period of silence, however, Defendant Hirsh was behind the scenes making a copycat website and Facebook page using Plaintiff's R.E.D. Branding, the RED Logo, and marketing the R.E.D. Branding and the RED Logo for competing charitable services directed

to deployed servicemembers and their families; the RED Logo is prominently displayed throughout, albeit inverted in color where the RED Logo is in white lettering and situated against a red background.  *See* Composite Exhibit G.



28.     On April 17, 2020, Plaintiff discovered the copycat website at the domain name www.remembereveryonedeployed.today, offering competing charitable services with the R.E.D. Branding that Defendant Hirsh had been using since February 2020.  Plaintiff emailed Defendant Hirsh immediately upon this discovery.

29.     In response, Defendant Hirsh claimed "I'm not sponsoring NASCAR at all right now" because "My contract with NASCAR, VLM, Brennan, and WOSM—died the day NASCAR was cancelled."  *See* Composite Exhibit H.

30.     Then, on May 1, 2020, for the first time, Defendant Hirsh indicated that he would not continue to work with Plaintiff on the NASCAR sponsorship.  *See* Composite Exhibit H.

31.     By this time, however, Defendants had already established the marketing of the R.E.D. Branding, with the sponsorship and Plaintiff's R.E.D. Branding and RED Logo being advertised through various prominent news outlets.  *See* Composite Exhibit I.

32.     Then Defendants engaged in a bait and switch tactic where they surreptitiously redirected would-be visitors, donors, and beneficiaries of Plaintiff R.E.D.'s charitable services to the competing charitable services and platforms–website and Facebook–created by the

Defendants, and also printed shirts and marketing materials using the R.E.D. Branding and the RED Logo, which are available for sale through these competing platforms.  *See e.g.*, Exhibit J.

33.     Defendants' competing charitable services and platforms with the R.E.D. Branding and the RED Logo, are improperly benefitting from the goodwill of Plaintiff R.E.D.

34.     Despite this redirection of the website and Facebook traffic, all profits realized by Defendants, were supposed to be for Plaintiff R.E.D.'s benefit, and in accordance with the agreements as established through the parties' communications, course of conduct, and Plaintiff's reliance thereon.

35.     Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' charitable services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' competing charitable services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

36.     Defendants' actions have caused actual confusion.

37.     On July 16, 2020, the law firm of Pagel, Davis, & Hill, P.C. posted on Facebook, a picture of the number 15 NASCAR car with the R.E.D. Branding and RED Logo, either believing it to be Plaintiff R.E.D. or affiliated with Plaintiff, and tagged Plaintiff (@RED.Remember.Everyone.Deployed) twice in the post.  *See* Exhibit K.

38.     Marla Tellez, a journalist and two-time Emmy winner nominee and news anchor, bought a t-shirt bearing the RED Logo from Defendants, and made a post on Instagram expressing support for Plaintiff R.E.D. and tagged Plaintiff in the post (@remembereveryonedeployed).  *See* Exhibit L.

39.  Another confused consumer with the Instagram handle @the_cottage_quiltingembroidery purchased a t-shirt from Defendants' competing website, remembereveryonedeployed.today, and tagged Plaintiff on the Instagram post.  *See* Exhibit M.

40.  An Instagram user with the handle @nascar_schemes promoted the NASCAR number 15 car with R.E.D. Branding paint schema and tagged Plaintiff in the post.  *See* Exhibit N.

41.  As recently as the weekend of September 27, 2020, an Instagram post by NASCAR driver Brennan Poole (@brennanpoole) shows the RED Logo on the number 15 NASCAR car in Las Vegas, Nevada.  *See* Exhibit O.

42.  Defendants' acts are willful with the deliberate intent to trade on the goodwill of Plaintiff and Plaintiff's RED Branding, the RED Globe Logo, and the RED Logo, cause confusion and deception in the marketplace, and divert potential revenues intended for Plaintiff's charitable services to the Defendants.

## <u>COUNT ONE</u>
### (TRADEMARK INFRINGEMENT UNDER FLORIDA COMMON LAW)

43.  Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 42, as though fully set forth herein.

44.  Through Plaintiff's use of its R.E.D. Branding, including its RED Logo and RED Globe Logo for its charitable services has generated considerable good will and acquired trademark rights in the R.E.D. Branding as distinctive identifiers of Plaintiff as the source of charitable services under the associated marks.

45.  Defendants' use of the RED Logo including any reproduction, counterfeit, copy, or colorable imitation of Plaintiff's RED Logo and such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, or advertisements intended to be used upon or in connection with

the sale, distribution, or advertising of charitable services on or in connection with which such use is unauthorized by Plaintiff and is likely to cause confusion, to cause mistake, or to deceive.

46.     Defendants' use of the R.E.D. Branding, the RED Globe Logo, and the RED Logo has caused and is likely to continue to cause confusion, mistake, and deception among consumers as to whether Defendants' competing goods and services are endorsed by, are connected with, are authorized by, or are otherwise associated with Plaintiff R.E.D.

47.     Defendants' willful and intentional actions constitute trademark infringement of Plaintiff's superior common law rights and has caused and will continue to cause Plaintiff to incur damage.

48.     Defendants' willful and intentional actions are causing immediate and irreparable harm and injury to Plaintiff, and to Plaintiff's goodwill and reputation, and will continue to both damage Plaintiff, and confuse donors, current sponsors, potential sponsors and the public unless enjoined by this court.  Plaintiff has no adequate remedy at law.

49.     Plaintiff is entitled to, among other relief, an award of actual damages, injunctive relief, Defendants' profits, destruction of infringing goods, damages, and reasonable attorneys' fees and court costs.

## **COUNT TWO**
### (FEDERAL UNFAIR COMPETITION – 15 U.S.C. § 1125(a))

50.     Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 42, as though fully set forth herein.

51.     Through Plaintiff's use in commerce of its R.E.D. Branding, including the RED Logo and RED Globe Logo for charitable services, Plaintiff has generated considerable good will and acquired trademark rights in the R.E.D. Branding as distinctive identifiers of Plaintiff as the source of charitable services under the associated marks.

52.     Defendants' unauthorized use in commerce of words, terms, names, symbols, or devices, or any combination thereof, consisting of or including the R.E.D. Branding, the RED Globe Logo, and the RED Logo, and/or derivatives thereof for competing charitable services is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff.

53.     Defendants' unauthorized use of the R.E.D. Branding, the RED Globe Logo, and the RED Logo in commercial advertising or promotion for its competing charitable services, misrepresents the nature, characteristics, qualities, and/or geographic origin of Defendants' goods and services and is merely an attempt to capitalize on the goodwill established by Plaintiff for Defendants' unauthorized competing charitable services on competing platforms.

54.     Defendants' use of the domain name remembereveryonedeployed.today is likely to cause confusion, mistake, and deception among consumers as to whether Defendants' competing goods and services are endorsed by, are connected with, are authorized by, or are otherwise associated with Plaintiff.

55.     Defendants' infringing actions are intentional and willful, as Defendants adopted and began using the R.E.D. Branding and the RED Logo with notice and actual knowledge of Plaintiff's mark, and Defendants refuse to cease its infringing activity notwithstanding Plaintiff's assertion and notice of its rights.

56.     Defendants' acts of infringement have and are causing actual damage and irreparable harm to Plaintiff, for which legal remedies are inadequate.  Therefore, in addition to monetary remedies, Plaintiff seeks injunctive relief to permanently bar Defendants from using the R.E.D. Branding, the RED Globe Logo, and the RED Logo, the domain name

remembereveryonedeployed.today, and any other confusingly similar designation in commerce in connection with charitable services directed to military servicemembers and their families.

57.     Defendants' unauthorized use in commerce of the R.E.D. Branding, the RED Globe Logo, and the RED Logo as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

58.     Defendants' actions as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

59.     Defendants' willful and intentional actions are and will continue to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

60.     Defendants' willful and intentional actions are causing immediate and irreparable harm and injury to Plaintiff, and to Plaintiff's goodwill and reputation, and will continue to both damage Plaintiff, and confuse the public unless enjoined by this court.  Plaintiff has no adequate remedy at law.

61.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with pre-judgment and post-judgment interest.

## COUNT THREE
(UNFAIR COMPETITION UNDER FLORIDA COMMON LAW)

62.     Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 42, as though fully set forth herein.

63.     Through Plaintiff's use of its R.E.D. Branding, including its RED Logo and RED Globe Logo for its charitable services has generated considerable good will and acquired

trademark rights in the R.E.D. Branding as distinctive identifiers of Plaintiff as the source of charitable services under the associated marks.

64.     By misappropriating and using the confusingly similar R.E.D. Branding, the RED Globe Logo, the RED Logo, and the domain name remembereveryonedeployed.today without authority from Plaintiff, Defendants have falsely designated and falsely represented that the goods and services Defendants promote, advertise, offer for sale, sell, and/or distribute originate from, are endorsed by, are connected with, are authorized by, or are otherwise associated with Plaintiff, the owner of common law trademark rights in the R.E.D. Branding, the RED Globe Logo, and the RED Logo for charitable services.

65.     Defendants have engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce which constitute trademark infringement, false advertising, and unfair competition in violation of the laws of the State of Florida.

66.     Defendants' actions have been willful and deliberate, and are intended to benefit Defendants at Plaintiff's expense.

67.     As a direct and proximate result of Defendants' willful and intentional actions, Plaintiff has suffered damages in an amount to be determined at trial.  Defendants' actions have caused, and will continue to cause, irreparable harm to Plaintiff, and will continue to so harm Plaintiff, unless preliminarily and permanently enjoined.

68.     Defendants are realizing profit and will continue to realize a profit from their unlawful actions.

69.      Defendants' willful and intentional actions constitute unfair competition under Florida common law.

70.     Plaintiff is entitled to an award of actual damages and such other, further, and different relief as the Court may deem proper under the circumstances.

## COUNT FOUR
(BREACH OF ORAL CONTRACT)

71.     Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 42, as though fully set forth herein.

72.     On December 20, 2019, Defendants sent an unsolicited offer to co-sponsor a car in the NASCAR Cup Series with Plaintiff and requested a copy of Plaintiff's logo.  *See* Exhibit A.

73.     On December 21, 2019, Plaintiff conditionally accepted Defendants' offer, subject to Defendants providing a mockup of where the logo would be positioned on the car.  *See* Exhibit P.

74.     On January 4, 2020, Defendants sent a copy of the mock-up to Plaintiff.  *See* Exhibit Q.

75.     Additionally, between December 20, 2019 and January 30, 2020, Plaintiff and Defendants engaged in numerous verbal communications relating to the proposed NASCAR sponsorship and the placement of Plaintiff's logo, both the "RED Globe Logo" and the "RED Logo".

76.     Through these written and verbal communications, the parties formed a binding oral contract, which was confirmed through both oral and written communications.

77.     This binding oral contract contained the following material, agreed upon terms:

      a.     Plaintiff agreed to (1) authorize use of its "RED Globe Logo" and the "RED Logo" to be placed on Brennan Poole's NASCAR Cup Series No. 15 Chevrolet Camaro with Premium Motorsports for 17 races in the 2020

NASCAR Cup Series, and (2) give Defendants proprietary access to Plaintiff's website and Facebook page.

b.  Defendants agreed to (1) fix telephone issues; (2) fix Facebook issues; (3) fix website issues; (4) fix monetization of website products; (5) guarantee at least $52,000 in income for travel expenses for 12 months; (6) enter into contract with Plaintiff; and (7) sponsor eight full NASCAR truck races (in addition to the 17 NASCAR car races) wherein the vehicle bearing Plaintiff's logo would be run.

78.     A January 30, 2020 press release issued on behalf of Defendants, as well as Brennan Poole, confirmed the sponsorship agreement for 17 NASCAR car races.  *See* Exhibit I.

79.     Defendants also confirmed this agreement in a written email communication to Plaintiff on or about February 19, 2020.  *See* Exhibit B.

80.     Then, a February 20, 2020 press release issued on behalf of Defendants, as well as Brenna Poole, further confirmed the sponsorship agreement for 8 NASCAR truck races.  *See* Exhibit I.

81.     Plaintiff performed its obligations under the agreement.  Specifically, Plaintiff provided a copy of its RED Globe Logo, provided Defendants confidential access to Plaintiff's website and Facebook page, and Plaintiff's representatives traveled to locations requested by Defendants for marketing.  *See* Exhibit P, Exhibit Q.

82.     Plaintiff has performed all conditions precedent that Plaintiff is required to perform under the agreement.

83.     Defendants, however, have failed to perform any of their obligations under the parties' agreement and have thus breached the agreement.

84.     Specifically, Defendants have breached their agreement with plaintiff by failing and/or refusing to "fix" phone, website, and Facebook "issues"; by failing and/or refusing to fix monetization of website products; by failing and/or refusing to sponsor eight full truck races wherein the car bearing Plaintiff's logo would be run.  *See* Composite Exhibit G, Composite Exhibit H, Exhibit J.

85.     Defendants also breached the implied covenant of good faith and fair dealing with respect to the parties' agreement by surreptitiously launching a copycat website and Facebook page offering competing charitable services using the R.E.D. Branding and the RED Logo.

86.     As a result of Defendants' breach, Plaintiff has suffered damages in the form of lost profits, lost opportunity to be represented in the NASCAR Cup Series as a sponsor, and general reputational harm with donors, current sponsors, future sponsors, and the public.

87.     The damages flow directly from and are the natural and probable consequences of Defendants' breach.

<u>**COUNT FIVE**</u>
(FRAUDULENT INDUCEMENT)

88.     Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 42, as though fully set forth herein.

89.     Defendants made a false statement concerning a material fact.

90.     Specifically, Defendants claimed to have an "interest in helping" Plaintiff and supporting its mission and commitment to deployed servicemembers and their families by providing Plaintiff with an opportunity to co-sponsor a car in the NASCAR Cup Series with Defendant Spartan.

91.     Defendants used this purported interest to gain the trust, and ultimately, access to Plaintiff's proprietary information when, in fact, Defendants' only interest was to induce Plaintiff into disclosing proprietary information which Defendants would, and did, use for its own gain.

92.     Defendants made the false statement with actual knowledge that the statement was false.  That is, Defendants did not intend to co-sponsor the races with Plaintiff R.E.D., but rather intended to dupe Plaintiff into giving over valuable, proprietary information and branding that Defendants would then use in their own scheme to trick consumers into believing that Defendants were R.E.D.

93.     Defendants made the false statement about the co-sponsorship opportunity with the intent that the Plaintiff would rely on it, and Plaintiff did rely in good faith on the false statement when it provided, copies of its logos, access to the backend of Plaintiff's R.E.D. website and Facebook page.

94.     Defendants agreed in writing and continued to represent to Plaintiff the co-sponsorship arrangement while secretly planning, and launching a copycat website and Facebook page using the R.E.D. Branding and the RED Logo offering competing charitable services, by printing shirts and marketing materials with the R.E.D. Branding and the RED Logo, and as a result, diverting Plaintiff's interested supporters and revenue to Defendants' platforms instead of Plaintiff's.

95.     Defendants' false statement is the legal cause of the Plaintiff's damages.

## COUNT SIX
### (PROMISSORY ESTOPPEL)

96.     Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 42, as though fully set forth herein.

17

97.     On December 20, 2019, Defendants sent an unsolicited offer to co-sponsor a car in the NASCAR Cup Series with Plaintiff and requested a copy of Plaintiff's logo. *See* Exhibit A.

98.     On December 21, 2019, Plaintiff conditionally accepted Defendants' offer, subject to Defendants providing a mockup of where the logo would be positioned on the car. *See* Exhibit P.

99.     On January 4, 2020, Defendants sent a copy of the mock-up to Plaintiff. *See* Exhibit Q.

100.    Additionally, between December 20, 2019 and January 30, 2020, Plaintiff and Defendants engaged in numerous verbal communications relating to the proposed NASCAR sponsorship and the placement of Plaintiff's logo, both the "RED Globe Logo" and the "RED Logo".

101.    Through these written and verbal communications, Defendants promised that the "RED Globe Logo" and the "RED Logo" would be placed on Brennan Poole's NASCAR Cup Series No. 15 Chevrolet Camaro with Premium Motorsports for 17 races in the 2020 NASCAR Cup Series.

102.    A January 30, 2020 press release issued on behalf of Defendants, as well as Brennan Poole, confirmed these promises. *See* Exhibit I.

103.    Furthermore, Defendants also promised Plaintiff to: (1) fix telephone issues; (2) fix Facebook issues; (3) fix website issues; (4) fix monetization of website products; (5) guarantee at least $52,000 in income for travel expenses for 12 months; (6) enter into contract with Plaintiff; and (7) sponsor eight full NASCAR truck races (in addition to the 17 NASCAR car races) wherein the vehicle bearing Plaintiff's logo would be run. *See* Exhibit B.

104.    Defendants also confirmed these promises in a written email communication to Plaintiff on or about February 19, 2020.  *See* Exhibit B.

105.    Then, a February 20, 2020 press release issued on behalf of Defendants, as well as Brenna Poole, further confirmed these promises.  *See* Exhibit I.

106.    In reliance on these promises and at Defendants' request, Plaintiff authorized use of its "RED Globe Logo" and the "RED Logo" to be placed on Brennan Poole's NASCAR Cup Series No. 15 Chevrolet Camaro with Premium Motorsports for 17 races in the 2020 NASCAR Cup Series, and gave Defendants proprietary access to Plaintiff's website and Facebook page.

107.    Defendants, however, after obtaining authorization from Plaintiff to use its logos and after obtaining proprietary access to Plaintiff's website and Facebook page, failed to fulfill its promises to Plaintiff.

108.    As a result of Plaintiff's actions in reliance on Defendant's promises, Defendants' failure to fulfill its promises was detrimental to Plaintiff.

109.    Defendants reasonably should have expected these promises to induce reliance in the form of action or forbearance by Plaintiff.

110.    Injustice can only be avoided by enforcement of Defendants' promises or by awarding Plaintiff money damages from Defendant to compensate Plaintiff for its detrimental reliance on Defendants' unfulfilled promises.

**COUNT SEVEN**
(BREACH OF CONTRACT IMPLIED IN FACT—QUANTUM MERUIT)

111.    Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 42, as though fully set forth herein.

112.    On December 20, 2019, Defendants sent an unsolicited offer to co-sponsor a car in the NASCAR Cup Series with Plaintiff and requested a copy of Plaintiff's logo.  *See* Exhibit A.

19

113.    On December 21, 2019, Plaintiff conditionally accepted Defendants' offer, subject to Defendants providing a mockup of where the logo would be positioned on the car.  *See* Exhibit P.

114.    On January 4, 2020, Defendants sent a copy of the mock-up to Plaintiff.  *See* Exhibit Q.

115.    Additionally, between December 20, 2019 and January 30, 2020, Plaintiff and Defendants engaged in numerous verbal communications relating to the proposed NASCAR sponsorship and the placement of Plaintiff's logo, both the "RED Globe Logo" and the "RED Logo".

116.    Through these written and verbal communications, it was agreed that the "RED Globe Logo" and the "RED Logo" would be placed on Brennan Poole's NASCAR Cup Series No. 15 Chevrolet Camaro with Premium Motorsports for 17 races in the 2020 NASCAR Cup Series.

117.    A January 30, 2020 press release issued by Defendants, as well as Brennan Poole, confirmed this agreement.  *See* Exhibit I.

118.    As further consideration for Plaintiff authorizing use of its logo and giving Defendants proprietary access to Plaintiff's website and Facebook page, Defendants agreed, partly in writing and partly orally, to:  (1) fix telephone issues; (2) fix Facebook issues; (3) fix website issues; (4) fix monetization of website products; (5) guarantee at least $52,000 in income for travel expenses for 12 months; (6) enter into contract with Plaintiff; and (7) sponsor eight full NASCAR truck races (in addition to the 17 NASCAR car races) wherein the car bearing Plaintiff's logo would be run.  *See* Exhibit B.

119.    Then, a February 20, 2020 press release issued on behalf of Defendants, as well as Brenna Poole, further confirmed this agreement.  *See* Exhibit I.

120.     Through these written and verbal communications, as well as through their course and conduct, the parties entered into a contract implied in fact.

121.     Plaintiff performed its obligations under the contract implied in fact.  Specifically, Plaintiff provided a copy of its RED Globe Logo, provided Defendants confidential access to Plaintiff's website and Facebook page, and Plaintiff's representatives traveled to locations requested by Defendants for marketing.  *See* Exhibit P, Exhibit Q.

122.     Defendants breached this contract implied in fact by failing and/or refusing to "fix" phone, website, and Facebook "issues"; by failing and/or refusing to fix monetization of website products; by failing and/or refusing to sponsor eight full NASCAR truck races (in addition to the 17 NASCAR car races) wherein the vehicle bearing Plaintiff's logo would be run.  *See* Composite Exhibit G, Composite Exhibit H, Exhibit J.

123.     Defendants also breached the implied covenant of good faith and fair dealing with respect to this contract implied in fact by surreptitiously launching a copycat website and Facebook page offering competing charitable services using the R.E.D. Branding and the RED Logo.

124.     As a result of Defendants' breach, Plaintiff has suffered damages in the form of lost profits, lost opportunity to be represented in the NASCAR Cup Series as a sponsor, and general reputational harm with donors, current sponsors, future sponsors, and the public.

## **COUNT EIGHT**
### (BREACH OF CONTRACT IMPLIED IN LAW—UNJUST ENRICHMENT)

125.     Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 42, as though fully set forth herein.

126.     Plaintiff conferred a benefit on Defendants, namely in the form of getting access to Plaintiff's R.E.D. Branding, including the RED Logo and RED Globe Logo for charitable services, Plaintiff's considerable good will generated over the years, including through its distinctive R.E.D.

Branding  that marketed, advertised, and promoted charitable services to the military and their families.

127.    Defendants solicited this benefit from Plaintiff.

128.    Defendants have knowledge of the benefit.

129.    Defendants accepted or retained the benefit conferred.

130.    The circumstances are such that it would be inequitable for Defendants to retain the benefit without paying fair value for it.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1.  That Defendants have infringed Plaintiff's superior common law trademark rights.

2.  That Defendants have engaged in unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and applicable Florida law;

3.  For damages, including actual damages and an award of Defendants' profits attributable to the use of infringing marks in an amount to be determined at trial, costs, interest, and reasonable attorneys' fees.

4.  Granting an injunction preliminarily and permanently enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

    a.  engaging in any activity constituting unfair competition with Plaintiff.

    b.  making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' goods

22

and services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's goods and services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants;

    c.   using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so; and

    d.   registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the mark R.E.D. Branding, the RED Globe Logo, and the RED Logo or any other mark that infringes or is likely to be confused with Plaintiff's R.E.D. Branding, the RED Globe Logo, and the RED Logo, or any goods or services of Plaintiff, or Plaintiff as their source.

5. Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

6. Treble the damages award under 15 U.S.C. § 1117.

7. Awarding such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff Remember Everyone Deployed Inc. demands trial by jury of all issues so triable.

Dated: May 11, 2021

**BRAVO LAW**
*Co-Counsel for Plaintiff*
1555 Bonaventure Blvd., Suite 2007
Weston, FL 33326
Telephone:  (954) 790-6711
Primary Email:  efile@lawbravo.com
Secondary Email: gbravo@lawbravo.com

By:  */s/ Gustavo A. Bravo*
    Gustavo A. Bravo, Esq.
    Florida Bar No. 551287

*And As Co-Counsel*

**FELDMAN LAW**
*Co-Counsel for Plaintiff*
9100 S. Dadeland Blvd., Suite 1500
Miami, FL 33156
Telephone: (305) 445-2005
Primary Email:
nkodsi@feldmandlawoffices.com
Secondary Email:
afeldman@feldmanlawoffices.com

By:  */s/ Neil D. Kodsi*
    Neil D. Kodsi, Esq.
    Florida Bar No. 11255

### <u>CERTIFICATE OF SERVICE</u>

    I HEREBY CERTIFY that on May 11, 2021, the foregoing was filed with the Court via CM/ECF and served via CM/ECF upon all counsel of record.

By:  */s/ Gustavo A. Bravo*
    Gustavo A. Bravo, Esq.
    Florida Bar No. 551287