UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 20-CV-62355-RUIZ/STRAUSS

**REMEMBER EVERYONE DEPLOYED INC.,**

    Plaintiff,

v.

**AC2T INC.,** *et al.***,**

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE is before me upon Defendants Spartan Mosquito and Jeremy Hirsch's Motion to Dismiss Plaintiff Remember Everyone Deployed, Inc.'s Amended Complaint, and Memorandum of Law in Support ("Motion") [DE 41].[1] The Honorable Rodolfo A. Ruiz II, United States District Judge, referred the Motion to me to take all action as required by law pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida [DE 42]. I have reviewed the Motion, the Response [DE 43], the Reply [DE 44], and the record, and I am otherwise duly advised in the premises. For the reasons stated below, I respectfully **RECOMMEND** that the Motion be **DENIED**.

    I.    **BACKGROUND**

On October 1, 2020, Plaintiff filed a five-count complaint ("Initial Complaint") [DE 1-1] against Defendants in state court alleging: (I) trademark infringement under Florida common law; (II) federal unfair competition – 15 U.S.C. § 1125(a); (III) unfair competition under Florida

---

[1] Defendants are AC2T, Inc. d/b/a Spartan Mosquito ("AC2T") and Jeremy Hirsch (collectively, "Defendants").

common law; (IV) breach of contract; and (V) fraudulent inducement. The action was subsequently removed to this Court. *See* [DE 1]. Thereafter, Defendants sought dismissal [DE 11], arguing that this Court lacks personal jurisdiction over Defendants and that Plaintiff failed to state a claim with respect to Counts III and IV of the Initial Complaint. I issued a Report and Recommendation ("Mar. 8, 2021 Report") [DE 28], recommending that Count IV (for breach of contract) be dismissed without prejudice for failure to state a claim and that the motion to dismiss [DE 11] otherwise be denied. The District Court entered an Order Affirming and Adopting Report and Recommendation [DE 29], which provided Plaintiff with the opportunity to file an amended complaint (in light of the dismissal of the breach of contract claim).

Consequently, Plaintiff filed an eight-count Amended Complaint for Damages ("Amended Complaint") [DE 38]. Counts I-III and V of the Amended Complaint are the same as the corresponding counts in the Initial Complaint and are not at issue here. Likewise, the general allegations of the Amended Complaint and the exhibits to the Amended Complaint remain unchanged. However, Count IV of the Amended Complaint has been amended and now specifically alleges a claim for breach of *oral* contract. Additionally, the Amended Complaint has added Counts VI-VIII: (VI) promissory estoppel; (VI) breach of contract implied in fact – quantum meruit; (VIII) breach of contract implied in law – unjust enrichment. It is the amended/new counts (Counts IV and VI-VIII) that are the subject of the Motion.

Turning to the factual allegations of the Amended Complaint – which the Court accepts as true and views in the light most favorable to Plaintiff, *see infra* Part II – Plaintiff is a not-for-profit corporation that provides charitable services and support to deployed military servicemembers and their families. Amended Complaint ¶¶ 2-3, 11. Defendant AC2T is a pest control company, and Defendant Hirsh is the founder of AC2T. *Id.* at ¶¶ 4-7.

Since 2016, Plaintiff has used certain acronyms, names, and domain names (collectively referred to in the Amended Complaint as "R.E.D. Branding") in conjunction with its marketing efforts, including "RED, R.E.D., Remember Everyone Deployed, and RememberEveryoneDeployed.org." *Id.* ¶ 12. Plaintiff's branding includes a highly stylized logo involving the image of a globe with the "RED" wording superimposed, and the "RED" wording alone is itself part of Plaintiff's branding:



*Id.* ¶ 14.

The parties to this case first interacted when Hirsh contacted Plaintiff on December 20, 2019, unsolicited, to offer an opportunity to co-sponsor the NASCAR Cup Series based upon Plaintiff's reputation for charitable services and community involvement. *Id.* ¶¶ 15, 17. On that date, Hirsh sent an email to Plaintiff stating, in relevant part, the following:

> I was wondering if we could put your logo on [a sponsored driver's] car for a few, if not, all 17 races this year. While the car will also have our sponsorship information on it (I understand if you don't want us on the same car), we would also be interested in giving you the entire car for a race this year.
>
> I'm asking for the rights to use your logo on Nascar Cup Series car with our logo. If you do not want your logo with ours, we are also asking if you would like us to give you the entire car for a race this year. There is no charge for this ever. Further, the driver will make social media posts about your efforts, and provide 2-4 Hot passes to any race your logo is on the car.

*Id.* at Ex. A. Plaintiff's Founder/CEO, Gloria M. De Paul, responded the following day stating:

> It was a pleasure to speak with you. I am blessed, to have your support with this mission.
>
> It would be an honor to accept, but if you could possibly send me a mockup of where the logo would be positioned and what it will look like.
>
> Attached is the logo and a few pictures . . . .
>
> Seriously sir, it was so great talking with you. . . . I live in Lauderdale by The Sea in Florida but I am visiting . . . will be back on the 29th.

*Id.* at Ex Q. On January 4, 2020, Hirsh responded with pictures reflecting placement of the logo and stating: "Here's what team wants to run for the Daytona 500—we have several other versions that will rollout through the season. Are you OK with this to start the season?" *Id.*

Defendants promised certain benefits to Plaintiff for co-sponsoring a car in the NASCAR Cup Series. For example, Hirsh represented that the driver of the NASCAR car would post on social media about Plaintiff's charitable services. *Id.* ¶ 18. Defendants also promised to make certain improvements to Plaintiff's website and engage with Plaintiff's established Facebook audience by responding to messages. *Id.* ¶ 20. In order to begin fulfilling the promises made to Plaintiff, Hirsh requested, and received, a copy of Plaintiff's R.E.D. logo, access to Plaintiff's proprietary website and Facebook page, and other confidential information. *Id.* ¶¶ 19-21.

The parties exchanged various emails relevant to the foregoing. For instance, in a February 19, 2020 email ("Feb. 19 Email"), Hirsh stated, in pertinent part, the following:

> I think we start simple and work our way up.
>
> [S]o far we have agreed that [AC2T] will:
>
> Communications:
>
> Fix your phone issue. . . . we will pay for this for at least the next 12 months and do it as soon as we are given authority. . . .
>
> Fix Facebook issue. We will be given the admin log in and password to your facebook page and we will respond to messages, manage ads, and ensure correct

4

> verbiage is used to grow your audience. . . . we will pay for this for at least the next 12 months and do it as soon as we are given authority.
>
> Fix website issue.  We will be given the admin log in and password to your website. We will ensure only legal language is on your website and update speed of use . . . we will pay for all of this for at least the next 12 months and do it as soon as we are given authority.
>
> Fix the monit[izat]ion of your website products. . . .
>
> We will guarantee at least $52,000 in income for you over the next 12 months to cover travel related expenses.
>
> Once your non-Profit is recognized again we can update your website language to ensure it is legal and enter in to a "contract" vs. just a memorandum of understanding.
>
> We will Sponsor 8 full truck races ALL RED—NO [AC2T]
>
> I believe these are good first steps . . . . These are the VERY basics that need to be accomplished to get y'all off the ground.  Once off the ground, we can go to a phase two of mid-level support.
>
> Let me know your thoughts.

*Id.* at Ex. B.

One week later, on February 26, 2020, Plaintiff's Executive VP sent an email ("First Feb. 26 Email") stating:

> Good morning Jeremy,
>
> Please look below for login in admin administration of R.E.D Facebook page
>
> - There are few transition items with our current IT admin underway. Will send password for Website in a few hours.
> - Creating a detail outline, by subject matter, of our past overall strategic conversations to be deployed ASAP to be called "First Steps".  It ill include our mutual R.E.D social media, strategic marketing/Platform deployment.
> - As accord, please introduce and place me in the R.E.D-Spartan strategy IT and marketing team communication group and any other decision maker subject matter team.
> - All strategic thus far discussed and agreed, will be activated. by today. Our team is aware.
>
> best regards,

*Id.* at Ex. P.  Later in the day (on February 26, 2020), Hirsh emailed a mockup of proposed changes for Plaintiff's website ("Second Feb. 26 Email").  *Id.* ¶ 25; Ex. E.

Subsequently, on March 3, 2020, Plaintiff's Executive VP sent Hirsh a letter detailing Plaintiff's vision for the website overhaul ("Mar. 3 Letter"). *Id.* ¶ 26; Ex. F. The Mar. 3 Letter outlines initiatives for Plaintiff's website, which the letter declares upfront "are R.E.D's voice and path to be deployed." *Id.* at Ex. F. The letter ends with the statement: "Jeremy, may we set up a conference call at your earliest convenience to go over the initiatives delineated in this document." *Id.* After several missed attempts to connect by phone, Hirsh stopped communicating with Plaintiff. *Id.* ¶ 26.

However, prior to that point, in reliance on Defendants' promises, Plaintiff provided Hirsh with confidential data and administrative access to Plaintiff's website and Facebook page, and Hirsh accessed these sites under the guise of making improvements, while at the same time (on February 19, 2020) creating a competing website, www.remembereveryonedelployed.today. *Id.* ¶¶ 21-23. Plaintiff discovered the competing website on April 17, 2020 and immediately emailed Hirsh regarding this discovery. *Id.* ¶ 28. Hirsh responded that he was not sponsoring NASCAR because it was cancelled as a result of the COVID-19 pandemic. *Id.* ¶ 29; Ex. H. On May 1, 2020, Hirsh indicated that he would not continue to work with Plaintiff even if he did decide to sponsor NASCAR again, providing various reasons therefor. *Id.* ¶ 30; Ex. H.

Instead of working with Plaintiff, Defendants engaged in a bait and switch tactic. *Id.* ¶ 32. Defendants redirected would-be visitors and donors of Plaintiff's website and Facebook platforms to Defendants' competing charitable services and platforms and used Plaintiff's branding and logo to promote their services and market shirts for sale, albeit with an inverted color scheme:



*Id.* ¶¶ 27, 32.

## II. LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). A complaint's exhibits comprise "part of the plaintiff's basic factual averments." *See F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) (citation omitted). Furthermore, exhibits govern when they contradict conclusory or general allegations in the complaint. *Id.* (citations

omitted). In reviewing the complaint, the court must do so in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted). *See also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

### III. ANALYSIS

#### A. Count IV – Breach of Oral Contract

Viewing the facts in the light most favorable to Plaintiff, Count IV plausibly alleges a claim for breach of oral contract. "Under Florida law, a plaintiff alleging breach of contract must plead: '(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach.'" *Kelley v. Metro. Life Ins. Co.*, No. 13-61864-CIV, 2013 WL 5797367, at *2 (S.D. Fla. Oct. 28, 2013) (quoting *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir.2009)). "With regard to alleging the existence of the contract, 'a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms.'" *Id.* (quoting *Vega*, 564 F.3d at 1272). Where the alleged contract is an oral contract, "a plaintiff is required to allege facts that, if taken as true, demonstrate that the parties mutually assented to 'a certain and definite proposition' and left no essential terms open. *Rubenstein v. Primedica Healthcare, Inc.*, 755 So. 2d 746, 748 (Fla. 4th DCA 2000) (citing *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297 (Fla. 1st DCA 1999)).

In Count IV of the Amended Complaint, Plaintiff alleges (as in the Initial Complaint) that Defendants offered a NASCAR Cup Series co-sponsorship to Plaintiff on December 20, 2019, that Plaintiff *conditionally* accepted on December 21, 2019, subject to Defendants providing a mock-up of where the logo would be placed on the sponsored car, and that Defendants sent the mock-up on January 4, 2020. Amended Complaint ¶¶ 72-74. As noted in the Mar. 8, 2021 Report, Plaintiff did not allege in the Initial Complaint that it approved of, or accepted, Defendants' proposal for placement of the logo. It is for that reason that I previously found that Plaintiff failed to plausibly establish the existence of a binding agreement once the mock-up was sent. *See* Mar. 8, 2021 Report at 21. After all, "acceptance [of an offer] is effective to create a contract only if it is absolute and *unconditional*, and identical with the terms of the offer." *Giovo v. McDonald*, 791 So. 2d 38, 40 (Fla. 2d DCA 2001) (citing *Ribich v. Evergreen Sales & Serv., Inc.*, 784 So.2d 1201 (Fla. 2d DCA 2001)) (emphasis added).

However, the Amended Complaint contains additional allegations regarding what occurred next – allegations that were absent from the Initial Complaint. It discusses how the parties continued to communicate, both in writing and orally, regarding the proposed NASCAR sponsorship and the placement of Plaintiff's Logo. Amended Complaint ¶ 75. These communications continued through January 30, 2020, and they culminated in the parties assenting to the material terms of an oral agreement, which were confirmed in oral and written communications. *Id.* ¶¶ 75-77. Under the Agreement, Plaintiff agreed to (1) authorize use of its logo on the sponsored car for 17 races in the 2020 NASCAR Cup Series, and (2) give Defendants access to Plaintiff's website and Facebook page. *Id.* ¶ 77. In exchange, Defendants agreed to:

> (1) fix telephone issues; (2) fix Facebook issues; (3) fix website issues; (4) fix monetization of website products; (5) guarantee at least $52,000 in income for travel expenses for 12 months; (6) enter into contract with Plaintiff; and (7) sponsor

>eight full NASCAR truck races (in addition to the 17 NASCAR car races) wherein the vehicle bearing Plaintiff's logo would be run.

*Id.* Thus, even though Plaintiff did not unconditionally accept Defendants' offer at the outset, the Amended Complaint alleges that after continued discussions, the parties reached an agreement on the aforementioned specific material terms. Although the Amended Complaint does not provide an overly detailed account of those terms, it does provide "sufficient specification" of those terms and implies that they were all of the material terms of the parties' agreement. It does so in such a manner that strikes the balance of providing sufficient factual allegations without including more than "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Moreover, as Plaintiff argues, the Feb. 19 Email supplements the allegations of the Amended Complaint; it does not contradict them. It merely provides more detail regarding certain terms of the alleged oral agreement *already in place* – an oral agreement that was not alleged to have already been in place in the Initial Complaint. The main problem with the Initial Complaint was that it was never clear how and when the parties reached an agreement on all material terms, if at all. Count IV of the Initial Complaint did not specifically reveal assent to any terms before the Feb. 19 Email was sent. Instead, in announcing the terms allegedly agreed upon, the Initial Complaint merely cited to the Feb. 19 Email, which does not *on its own* reveal the assent of both parties to all of the material terms of an agreement.[2]

---

[2] In their Reply, Defendants argue that paragraph 77 of the Amended Complaint simply includes the same alleged material terms that were included in the Initial Complaint and that the Court rejected Plaintiff's contention regarding these allegations. Reply at 4. But the Court did so because Plaintiff merely cited to the Feb. 19 Email without otherwise alleging how and when the parties supposedly agreed upon the alleged terms.

10

Additionally, as discussed in further detail in the Mar. 8, 2021 report, the communications that followed – the First Feb. 26 Email, the Second Feb. 26 Email, and the Mar. 3 Letter – absent further allegations undermined the contention that the parties reached an agreement on all material terms because those communications revealed an attempt to modify or define what Defendants were obligated to do. Thus, without any allegations demonstrating how and when the parties reached an agreement (if at all), the exhibits called into question Plaintiff's contention regarding a meeting of the minds with respect to the Initial Complaint. However, now that the Amended Complaint alleges how and when the parties reached an agreement, and given that it alleges the parties reached an agreement on all material terms, any modification sought in connection with the aforementioned correspondence would not vitiate an agreement that had already been reached before the transmission of the correspondence. Further, even if the parties' agreement (that they reached prior to the Feb. 19 Email) did not definitively fix every detail, I cannot conclude – at the motion-to-dismiss stage – that the agreement was not binding. *See ABC Liquors, Inc. v. Centimark Corp.*, 967 So. 2d 1053, 1057 (Fla. 5th DCA 2007) ("[E]ven though all the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them. A subsequent difference as to the construction of the contract does not affect the validity of the contract or indicate the minds of the parties did not meet with respect thereto." (quoting *Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 408 (Fla. 1974))).[3]

---

[3] In addition to alleging how and when the parties reached a meeting of the minds, Count IV now includes specific allegations regarding the press releases attached to the Amended Complaint as Exhibit I. Amended Complaint ¶¶ 78, 80. Those press releases, which were issued by or on behalf of Defendants, note that the sponsored car would bear Plaintiff's logo and refer to the engagement with Plaintiff. *Id.* at Ex. I. Those press releases lend further plausibility to Plaintiff's position that Defendants intended to be bound at the time the press releases were issued (on January 30, 2020 and February 20, 2020).

For the foregoing reasons, the new allegations, which allege assent prior to the Feb. 19 Email, and the other correspondence that followed, "nudge" Plaintiff's breach of contract claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### B. Count VI – Promissory Estoppel

The Motion should be denied as to Count VI. A party asserting a claim for promissory estoppel under Florida law must establish the following elements: "[1] A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and [2] which does induce such action or forbearance is binding if [3] injustice can be avoided only by enforcement of the promise." *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 93 (Fla. 2013) (quoting *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924 (Fla. 1989)). Plaintiff has alleged facts to establish these elements, and Defendants do not appear to contend otherwise. Instead, Defendants argue that Count VI is deficient because the alleged promises were not "definite and certain." Motion at 9-10. In that vein, Florida law requires that a promise underlying a promissory estoppel claim be "definite." *Tome v. State Farm Fire & Cas. Co.*, 125 So. 3d 864, 867 (Fla. 4th DCA 2013). Stated differently, the promise cannot be "entirely indefinite as to terms and time." *Id.* (quoting *W.R. Grace*, 547 So. 2d at 924).

In Count VI, Plaintiff alleges that Defendants promised that Plaintiff's logos would be placed on the sponsored car for 17 races in the 2020 NASCAR Cup Series and that Defendants further promised to:

> (1) fix telephone issues; (2) fix Facebook issues; (3) fix website issues; (4) fix monetization of website products; (5) guarantee at least $52,000 in income for travel expenses for 12 months; (6) enter into contract with Plaintiff; and (7) sponsor eight full NASCAR truck races (in addition to the 17 NASCAR car races) wherein the vehicle bearing Plaintiff's logo would be run.

Amended Complaint ¶¶ 101, 103.  It is in reliance on these promises that Plaintiff authorized the use of its logos and provided Defendants with access to Plaintiff's website and Facebook page.  *Id.* ¶ 106.

Nevertheless, Defendants argue that the parties were still involved in active negotiations and that no definite promises were made.  Motion at 10.  While the exhibits to the Complaint may (or may not) show that Plaintiffs sought to have Defendants do more work than that which was promised, they do not change the fact that at least some, if not all, of the promises alleged are sufficiently definite.  As to the 17 races, *see* Amended Complaint ¶ 101, the alleged promise was clearly definite and specific.  As to the first four items in paragraph 103 of the Amended Complaint (promising to fix certain issues), the promise is definite when considered in context with the Feb. 19 Email, which spelled out specific actions Defendants would take to fix the issues.  The fifth item in paragraph 103 is also definite in that it includes a specific dollar number and minimum term.  The seventh item (related to sponsoring eight truck races) is also sufficiently definite.  With respect to the only other item – the sixth item, which provides for entry into a contract – it is difficult to conclude at this stage that it is not definite when considered in conjunction with the Feb. 19 Email.  Regardless, even if it is not, Plaintiff still states a claim because it has alleged that it detrimentally relied on at least certain definite promises by handing over access to its website and Facebook page.  It is more than plausible that it would have only handed over access if it were reasonably convinced that Defendants were going to proceed with the promised work on the website and Facebook page.  Notably, the significance of the definiteness requirement relates to whether a promisor foresees or reasonably should have foreseen that the promisee would rely.  *See Winnie v. Infectious Disease Assocs., P.A.*, 750 F. App'x 954, 964 (11th Cir. 2018).  Based on the allegations of the Amended Complaint, Defendants knew or should have known that Plaintiff

provided access on account of the promises – of a definite nature – made by Defendants. Thus, Count VI states a claim.

### C. Count VII – Breach of Contract Implied-in-Fact

The Amended Complaint plausibly alleges a claim for breach of contract implied-in-fact/quantum meruit. "The doctrine of quantum meruit, also called a contract implied in fact, imposes liability, in the absence of an express agreement, 'based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words.'" *F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 48 (Fla. 4th DCA 2021) (citing *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 385 (Fla. 4th DCA1997)). Unlike an express contract, which is arrived at by words (oral or written), "[a] contract implied in fact is not put into promissory words with sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement." *Id.* (quoting *Com. P'ship*, 695 So. 2d at 385). "The only distinction between an express and implied-in-fact contract is the manner in which the parties' assent is manifested or proven." *Baron v. Osman*, 39 So. 3d 449, 451 (Fla. 5th DCA 2010) (citations omitted).

Defendants again argue that the allegations and exhibits reveal the parties never reached an agreement – in other words, that the allegations and exhibits reveal a lack of assent. But when the allegations of Count VII are considered in conjunction with other alleged circumstances and conduct, the Amended Complaint plausibly establishes assent, particularly when considered against the backdrop of the standard governing a motion to dismiss. Not only does Count VII contain similar allegations regarding the oral and written communications and terms as in previous counts, it also includes allegations regarding the parties' conduct that tend to demonstrate assent to proceed with the arrangement the parties had been discussing. Specifically, Plaintiff points to

two press releases issued by or on behalf of Defendants, which note that the sponsored car would bear Plaintiff's logo and refer to the engagement with Plaintiff.  Amended Complaint ¶¶ 117, 119 & Ex. I.  Drawing reasonable inferences in Plaintiff's favor, it is plausible to presume Defendants would not have approved of or issued such press releases prior to the parties believing they had agreed to terms.  Additionally, Plaintiff indicates that its conduct similarly shows that it believed assent to be in place given that it provided a copy of its logo to Defendants, provided Defendants with access to Plaintiff's website and Facebook page, and that its representatives traveled to locations for marketing as requested by Defendants.  *Id.* ¶ 121.  Thus, even if the parties never said "I agree" in their oral and written communications, those communications coupled with the aforementioned circumstances are sufficient to infer assent at this stage.  Therefore, the Motion should be denied with respect to Count VII.

### D. Count VIII – Unjust Enrichment

Plaintiff has stated a claim for unjust enrichment.  A party pursuing an unjust enrichment claim under Florida law must establish the following elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it."  *F.H. Paschen*, 311 So. 3d at 48 (Fla. 4th DCA 2021) (citing *Com. P'ship*, 695 So. 2d at 386).

It is undisputed that Plaintiff has alleged the foregoing elements and that it has alleged specific facts regarding the benefit allegedly conferred.  However, Defendants argue that the Court should dismiss Count VIII because Plaintiff does not allege the absence of an adequate remedy at law.  Motion at 12.  Relatedly, Defendants contend that the Amended Complaint does not indicate that this is a situation where an adequate remedy at law does not exist.  *Id.*  In so arguing in the

Motion, Defendants rely on three cases. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1083 (S.D. Fla. 2019); *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000); *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1342 (S.D. Fla. 1998).

Neither *Am. Marine* or *Webster* support Defendants' position, and it is unclear that *Nautica* does when read in its entirety. In *Am. Marine*, where an unjust enrichment claim was dismissed without prejudice, the problem with the claim was that it incorporated allegations of an express agreement. *See* 418 F. Supp. 3d at 1083. Thus, the allegations incorporated into the count itself negated any unjust enrichment claim. That is because "a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019) (quoting *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008)). But in this case, the unjust enrichment claim does not allege the existence of an express contract. In *Webster*, the unjust enrichment claim was dismissed primarily because the defendant admitted that an express contract existed. 124 F. Supp. 2d at 1326. The court noted in passing that the plaintiff failed to allege the lack of an adequate remedy at law, *see id.* at 1326-27, but the absence of that allegation was more significant in *Webster* given the absence of a dispute in that case regarding the existence of an express contract. Unlike the defendant in *Webster*, Defendants have not admitted – and, indeed, appear to adamantly contest – the existence of an express contract in this case. In such a situation, a plaintiff may plead its unjust enrichment claim in the alternative. *See, e.g.*, *Cuhaci v. Kouri Grp., LP*, No. 20-CV-23950, 2021 WL 2290685, at *8 (S.D. Fla. June 4, 2021) ("An unjust enrichment claim, however, may be pled in the alternative to a legal remedy so long as the existence of an express contract is in dispute. . . . If the existence of an express contract is in

dispute, a motion seeking to dismiss a claim for unjust enrichment is premature. . . . [T]he law clearly sets forth that Cuhaci may assert an alternative equitable claim until the Nominee Agreement is proven and undisputed." (internal citations omitted)).[4]

Ultimately, there is no dispute here regarding whether Plaintiff pled sufficient factual allegations in Count VIII, and Plaintiff has otherwise satisfied the notice-pleading requirements of Rule 8. Therefore, and because the parties dispute whether an express contract exists, Plaintiff may pursue its unjust enrichment claim, as presently pled, in the alternative to its breach of contract claim.

## IV. CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that the Motion [DE 41] be **DENIED**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained

---

[4] As to *Nautica*, the court did find that the failure to allege a contractual remedy was inadequate warranted dismissal. 5 F. Supp. 2d at 1342. However, in doing so, the court assumed that the defendant's conduct breached a contract between the parties and, therefore, that the plaintiff had a contractual remedy. *Id.* It appears that the parties in *Nautica* did not dispute the existence of a contract. Also, it is unclear whether the unjust enrichment claim was pled in the alternative. Thus, while not entirely clear, *Nautica* is likely distinguishable.

in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**DONE** and **SUBMITTED** in Fort Lauderdale, Florida, this 24th day of June 2021.

*[signature]*

Jared M. Strauss
United States Magistrate Judge